AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means ❏ Original ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>888 W North Bend Road #1022<br>Cincinnati, Ohio 45224 | )<br>)<br>)<br>)<br>)<br>) | Case No. 1:21-MJ-00858 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Southern _____ District of _____ Ohio _____
*(identify the person or describe the property to be searched and give its location):*
See Attachment A5 (incorporated by reference).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*
See Attachment B (incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before _____ November 29, 2021 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m. ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Stephanie K. Bowman or Hon. Karen L. Litkovitz _____.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)* ❏ until, the facts justifying, the later specific date of _____

Date and time issued: **4:29 PM, Nov 15, 2021** _____ *Stephanie K. Bowman* _____
*Judge's signature*

City and state: Cincinnati, Ohio _____ Hon. Stephanie K. Bowman, U.S. Magistrate Judge _____
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>1:21-MJ-00858 | Date and time warrant executed:<br>11/16/2021 7:49 am | Copy of warrant and inventory left with:<br>888 W Northbend Road #1022 |

| Inventory made in the presence of :<br>SA Kramer & TFO Bonner |
|---|

| Inventory of the property taken and name of any person(s) seized: |
|---|
| Nothing was seized. |

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date:        12/01/2021

_____
Executing officer's signature

SA Cameron C. Rice
_____
Printed name and title

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>888 W North Bend Road #1022<br>Cincinnati, Ohio 45224 | )<br>)<br>)  Case No. 1:21-MJ-00858<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A5 (incorporated by reference).

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code,<br>Section 846 | Conspiracy to possess with intent to distribute and distribute controlled<br>substances |

The application is based on these facts:

See Affidavit in Support of Application for Search Warrants.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Cameron C. Rice, Special Agent DEA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ FaceTime Video Conference _____ *(specify reliable electronic means).*

Date: **Nov 15, 2021**

_____
*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Stephanie K. Bowman, U.S. Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Cameron C. Rice, Special Agent with the Drug Enforcement Administration, being first duly sworn, hereby state:

## INTRODUCTION

1.      This affidavit is submitted in support of an application for search warrants for evidence, contraband, fruits and instrumentalities of a crime, persons to be arrested, property used or intended to be used in the commission of crime(s), related to evidence of a conspiracy to possess with intent to distribute, cocaine, fentanyl, methamphetamine, and/or other controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1); and money laundering and conspiracy to do the same in violation of 18 U.S.C. §§ 1956 and 1957.

2.      For all the reasons outlined in this affidavit, I submit that there is probable cause to believe that evidence related to these crimes will be located within the following **SUBJECT LOCATIONS**, which are more fully described in **Attachments A1 through A11** (attached hereto and incorporated herein by reference):

 a. 1441 Hillcrest Road, Apartment 4, Cincinnati, Ohio 45224 (**SUBJECT LOCATION 1**). I believe that evidence of Alton BEACHER's, Quinton JENNINGS's, and Steffen ROBERSON's drug trafficking activities will be found at **SUBJECT LOCATION 1**.

 b. 1441 Hillcrest Road, Apartment 8, Cincinnati, Ohio 45224 (**SUBJECT LOCATION 2**). I believe that evidence of Alton BEACHER's, Quinton JENNINGS's, and Steffen ROBERSON's drug trafficking activities will be found at **SUBJECT LOCATION 2**.

 c. 7216 Park Avenue, Mount Healthy, Ohio 45231 (**SUBJECT LOCATION 3**). I believe that evidence of Alton BEACHER's, Quinton JENNINGS's, and Steffen ROBERSON's drug trafficking activities will be found at **SUBJECT LOCATION 3**.

 d. 5400 Hamilton Avenue, Apartment 403, Cincinnati, Ohio 45224 (**SUBJECT LOCATION 4**). I believe that evidence of Quinton JENNINGS's drug trafficking activities will be found at **SUBJECT LOCATION 4**.

 e. 888 West North Bend Road, #1022, Cincinnati, Ohio 45224 (**SUBJECT LOCATION 5**). I believe that evidence of Alton BEACHER's, Quinton JENNINGS's, and Steffen ROBERSON's drug trafficking activities will be found at **SUBJECT LOCATION 5**.

f.   8330 Landmark Court, Apartment 206, West Chester, Ohio 45069 (**SUBJECT LOCATION 6**). I believe that evidence of Alton BEACHER's drug trafficking activities will be found at **SUBJECT LOCATION 6**.

g.   8685 Daly Road, Cincinnati, Ohio 45231 (**SUBJECT LOCATION 7**). I believe that evidence of Alton BEACHER's, Quinton JENNINGS's, and Steffen ROBERSON's drug trafficking activities will be found at **SUBJECT LOCATION 7**.

h.   3920 Old Ludlow Avenue Cincinnati, Ohio 45223 (**SUBJECT LOCATION 8**). I believe that evidence of Steffen ROBERSON's and Quinton JENNINGS's drug trafficking activities will be found at **SUBJECT LOCATION 8.**

i.   A black 2020 Nissan Murano, bearing Ohio Passenger plate JLN3541 with Vehicular Identification Number 5N1AZ2AS3LN142724 (**TARGET VEHICLE #1**). I believe Quinton JENNINGS uses TARGET VEHICLE #1 in furtherance of his drug trafficking and evidence of JENNINGS' drug trafficking will be found in **TARGET VEHICLE #1**.

j.   A silver Dodge Charger bearing Alabama license plate 11KY153 with Vehicular Identification Number 2C3CDXBG0LH235331 (**TARGET VEHICLE #3**). I believe Alton BEACHER uses TARGET VEHICLE #3 in furtherance of BEACHER's drug trafficking and evidence of BEACHER's drug trafficking will be found in **TARGET VEHICLE #3**.

k.   A white Honda Accord bearing Texas temporary passenger plate 28680K5 with Vehicular Identification Number 1HGCV1F3XJA021148 (**TARGET VEHICLE #4**). I believe Steffen ROBERSON uses **TARGET VEHICLE #4** in furtherance of ROBERSON's drug trafficking and evidence of ROBERSON's drug trafficking will be found in **TARGET VEHICLE #4**.

3.      This affidavit is submitted in support of an application for warrants to search the above listed **SUBJECT LOCATIONS** more fully described in **Attachments A1 through A11** for evidence, contraband, fruits and instrumentalities of a crime, persons to be arrested, property used or intended to be used in the commission of crime(s), as more particularly described in **Attachment B** (incorporated herein by reference).

4.      This affidavit is for the limited purpose of demonstrating probable cause. Therefore, I have not set forth each and every fact I have learned during this investigation, but only those facts and circumstances necessary to establish probable cause. The facts reported in this affidavit are based on my own knowledge, the knowledge of other law enforcement agents/officers involved in the

investigation, and the use of Confidential Sources/Sources of Information.

## INVESTIGATIVE BACKGROUND

5.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7) of Title 18, United States Code, that is, an officer of the United States who is empowered by the law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516.

6.      I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA") and have been so employed since February 2018. Prior to being employed with the DEA, I was employed as a State Trooper for the State of Ohio for over two years. I graduated from Coast Guard Boot Camp, the Ohio State Highway Patrol Academy, American Military University, and the DEA Basic Agent Academy. As a Special Agent of the DEA, my duties and responsibilities include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have participated in several federal criminal investigations seeking evidence of violations of, inter alia, the Federal Controlled Substances Act (Title 21 of the United States Code).

7.      I am currently assigned to the Cincinnati District Office of the DEA. I received specialized training from the DEA, including the 18-week Basic Agent Training course. That training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug

violations.

.

9.     I have had discussions with other law enforcement officers and other cooperating individuals about the packaging and preparation of narcotics, methods of operations, and security measures which are often employed by narcotics traffickers.   I have examined documentation of various methods in which illicit drugs are smuggled, transported, and distributed.

10.     By virtue of my training and experience, through my conversations with and review of reports from other experienced agents and officers who conduct drug investigations, I have become familiar with the methods used by drug traffickers to import, transport, store, safeguard, remit and/or launder drug proceeds; and the methods used by drug traffickers to collect, transport, store, safeguard, remit and/or launder drug proceeds; and the methods used by drug traffickers to obtain and use telephones, pagers, computers, and other devices in order to communicate with each other;

4

and the jargon and/or codes commonly used when they refer to drugs and/or drug proceeds. As a result of my experience, I have become familiar with the day-to-day operations and the various tools, methods, trends, paraphernalia, and related articles used by various traffickers in their efforts to manufacture, possess, import, conceal, package, use, and distribute controlled substances.

11.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. The sources of my information and beliefs include oral and written reports about this and other investigations received from fellow agents and Task Force Officers with the DEA, agents with the Federal Burau of Investigation (FBI) as well as officers with the Cincinnati Police Department.

12.     The following statement of facts and circumstances detail the involvement of certain individuals in drug trafficking and the use of the **SUBJECT LOCATIONS** to facilitate those drug trafficking activities. Based on my training and experience, my participation in this investigation, as well as information I believe to be reliable based on oral and written reports about this investigation and other investigations, physical surveillance conducted by federal/state law enforcement agencies, telephone toll records and subscriber information, location data obtained from GPS tracking devices, public records, and law enforcement databases, I know the following:

## PROBABLE CAUSE

13.     Police Officer Jonce Tackett, a Cincinnati Police Officer, and myself, both with extensive training and experience investigating drug trafficking offenses, are currently involved in an ongoing drug trafficking investigation involving suspects Steffen ROBERSON, Alton BEACHER, and Quinton JENNINGS.

## A. **Information Related to SUBJECT LOCATION 1 and SUBJECT LOCATION 2**

14.     During the week of August 29, 2021, agents/officers met with a confidential informant (CI#1) who stated an individual known to him/her as "Yo" is trafficking methamphetamine. CI#1 stated "Yo" is involved in the sale of methamphetamine in the greater Cincinnati area and uses the telephone number (419) 936-0005 to coordinate methamphetamine sales with customers and co-conspirators. CI#1 stated "Yo" is a male black who uses the Instagram account, "Frank_Castilla16."

15.     CI#1 is reliable in that s/he provided information on this case that was independently verified and proven true and correct. CI#1 has also provided information on this case and others that has been verified by the agents/officers. CI#1 can identify marijuana, heroin, methamphetamine, and cocaine due to past contacts with the drugs as well as association with drug users and illegal drug traffickers.  CI#1 has previous felony convictions ███████████ ████████████████████████

16.     Through law enforcement databases, agents/officers identified the user of Instagram account, "Frank_Castilla16," as Alton BEACHER, born September 16, 1979. The agents/officers provided CI#1 with a current Ohio BMV photo of Alton BEACHER. CI#1 positively identified the photo of Alton BEACHER as who s/he knows as "Yo."

17.     Additionally, CI#1 stated BEACHER sells methamphetamine out of a second-floor apartment in the multi-family located at 1441 Hillcrest Road (**SUBJECT LOCATION 1**).  CI#1 also stated BEACHER keeps kilogram quantities of methamphetamine and cocaine on the third floor (**SUBJECT LOCATION 2**). CI#1 states the third-floor apartment is directly above the

second-floor location. CI#1 stated s/he could identify the individual whose apartment it is on the third floor.

18.     Agents/officers searched Hamilton County Clerk of Courts records and learned Alton BEACHER has previous felony convictions for having weapons while under disability, trafficking in heroin, trafficking in cocaine, possession of cocaine, and trafficking in drugs.

19.     Between August 30 and September 1, 2021, agents/officers met with CI#1 to conduct a controlled methamphetamine purchase from BEACHER. Prior to the controlled purchase, agents/officers searched CI#1 and CI#1's vehicle for contraband and U.S. currency. Agents/officers did not locate any contraband or U.S. Currency on CS#1 or inside CS#1's vehicle.

20.     The agents/officers directed CI#1 to place a one-party, consensually recorded phone call to BEACHER on cellular telephone number (419) 936-0005 (hereinafter referred to as BEACHER Phone #1). During the conversation, BEACHER told CI#1 to go to "the spot" and that "Smoke" will provide CI#1 with the methamphetamine. CI#1 knows "the spot" to mean 1441 Hillcrest Road (i.e., the structure containing **SUBJECT LOCATION 1** and **SUBJECT LOCATION 2**). Agents/officers provided CI#1 with an audio/video recording device and pre-recorded U.S. currency to use during the controlled buy. While under the constant monitoring and control of the agents/officers, CI#1 traveled to 1441 Hillcrest Road.  CI#1 entered the common entry door for 1441 Hillcrest Road, walked up one flight of stairs, and entered the door to Apartment 4, which is to the right at the top of the first flight of steps (**SUBJECT LOCATION 1**). CI#1 was let inside and met by "Smoke."   CI#1 provided "Smoke" with the recorded U.S. currency in exchange for methamphetamine.

21.     While inside the apartment, CI#1 spoke with another individual known to him/her as "Worm."  CI#1 stated "Worm" offered to sell CI#1 cocaine. CI#1 then left the meet location and traveled to a neutral location while under constant monitoring and control of agents/officers. Agents/officers met with CI#1 where CI#1 immediately surrendered an amount of suspected methamphetamine and the digital recording device. Agents/officers searched CI#1 and CI#1's vehicle for contraband and U.S. Currency. No contraband or U.S. Currency was recovered from CI#1's person or vehicle.  The suspected methamphetamine was transported to the Hamilton County Coroner's Lab for analysis. Agents/officers received a confirmation from the Hamilton County Crime Laboratory (CL21-06102) that the suspected methamphetamine purchased from "Smoke" at the direction of BEACHER was methamphetamine, a schedule II-controlled substance.

22.     CI#1 confirmed to the agents/officers that "Smoke" provided him/her with the methamphetamine. Agents/officers are familiar with an individual, Quinton JENNINGS, a male black born XX/XX/1982, who goes by the street name "Smoke" from a previous drug investigation in the College Hill neighborhood of Cincinnati, Ohio. Agents/officers showed CI#1 a recent Ohio BMV photo of Quinton JENNINGS. CI#1 positively identified the photo of Quinton JENNINGS as who s/he knows as "Smoke."  Agents/officers searched the Hamilton County Clerk of Courts records and learned Quinton JENNINGS has previous felony convictions for robbery, trafficking in heroin, and possession of heroin.

23.     Agents/officers are also familiar with an individual from a previous drug trafficking investigation by the name of Steffen ROBERSON, a male black born XX/XX/1981, who goes by the street name "Worm."  Agents/officers showed CI#1 a recent Ohio BMV photo of Steffen

ROBERSON. CI#1 positively identified the photo of Steffen ROBERSON as who s/he knows as "Worm," and as the person who offered to sell cocaine to CI#1 during the controlled purchase. Agents/officers searched the Hamilton County Clerk of Courts records and learned Steffen ROBERSON has previous convictions for possession of cocaine, tampering with evidence, possession of marijuana, possession of heroin, and trafficking in cocaine.

24.     CI#1 stated s/he does not have a phone number for ROBERSON but stated if s/he needs to contact ROBERSON, s/he calls JENNINGS at (513) 430-6338 (hereinafter referred to as "JENNINGS Phone #1"). CI#1 stated JENNINGS uses JENNINGS Phone #1 to coordinate cocaine sales with customers and co-conspirators, including ROBERSON.

25.     On September 2, 2021, agents/officers directed CI#1 to place a one-party consensually recorded FaceTime call to JENNINGS on JENNINGS Phone #1. During the FaceTime call with JENNINGS, CI#1 asked about the cocaine ROBERSON offered to CI#1. JENNINGS stated he had to call ROBERSON to see if he's at the "spot" known to CI#1 as 1441 Hillcrest Road. CI#1 attempted to call JENNINGS again on JENNINGS Phone #1 with no answer. CI#1 was debriefed and released.

26.     On September 17, 2021, at approximately 11:00 a.m., agents/officers observed, via covert surveillance equipment, a silver Nissan Altima bearing Ohio passenger plate HSV5154[1] (hereinafter to as "Target Vehicle #2") arrive in front of 1441 Hillcrest Road. A male black matching the physical description of JENNINGS, later confirmed to be JENNINGS via physical surveillance, exited Target Vehicle #2, and entered the common entry door of 1441 Hillcrest Road. At approximately 11:30 a.m., JENNINGS exited 1441 Hillcrest Road and walked toward a red

---

1 Officers/agents confirmed that Target Vehicle #2 has been returned to Enterprise Rental vehicles, and for that reason, a search warrant for Target Vehicle #2 is not being requested.

GMC SUV that had just arrived in the parking lot next to 1441 Hillcrest Road. Agents/officers observed JENNINGS approach the driver's side and appear to have a conversation with the driver of the red GMC SUV. JENNINGS then walked around to the rear passenger seat and got into the red GMC SUV. Approximately one minute later, JENNINGS exited the red GMC SUV and walked to the passenger side door of Target Vehicle #2, where JENNINGS retrieved a plastic bag from the passenger seat of Target Vehicle #2 and walked back inside the common entry door of 1441 Hillcrest Road.

27.     Based on agents'/officers' training and experience, illegal drug traffickers often use vehicles to facilitate and conceal their illegal drug trafficking activities. Agents/officers know illegal drug transactions usually only last a few minutes. Based on agents'/officers' training and experience, agents/officers believe JENNINGS exited 1441 Hillcrest Road to complete an illegal drug transaction with the occupants of the red GMC SUV.

28.     On September 20, 2021, I submitted a federal administrative subpoena to Duke Energy regarding account information associated with 1441 Hillcrest Road Cincinnati, Ohio 45224. On September 29, 2021, agents/officers received the Duke Energy account information for 1441 Hillcrest Road. The billing information for **SUBJECT LOCATION 1**—where the controlled buy of methamphetamine took place—is in the name of ████████████ born XX/XX/1952. ████████ ████████ provided the telephone number (513) 413-0594 to Duke Energy. A review of historical calls for JENNINGS Phone #1 shows ████████████ telephone number (513) 413-0594 was called 6 times from October 11, 2021, to October 18, 2021. The billing information for **SUBJECT LOCATION 2** – the stash location – is in the name of ████████████

29.     Based on information provided by an FBI Source of Information/Cooperating Defendant (CD#1[2]), agents/officers are aware that a "███████ lives inside of **SUBJECT LOCATION 1**. A search of ████████████ historical addresses shows a ████████████ a male black, born XX/XX/1961, sharing the same address history with Ferguson.  A search of law enforcement databases identifies ████████████ telephone number as (513) 952-7399 and his address as **SUBJECT LOCATION 1**.  A review of historical calls for JENNINGS Phone #1 shows 39 calls between JENNINGS Phone #1 and ████████████ telephone number (513) 952-7399.

30.     Agents/officers reviewed police radio runs from September 2021 to **SUBJECT LOCATION 1** and **SUBJECT LOCATION 2** and learned of a complainant who stated a man named ████ is selling drugs outside of **SUBJECT LOCATION 1** and **SUBJECT LOCATION 2**.

31.     Additionally, agents/officers showed CI#1 recent Ohio BMV photos of each listed Duke Energy account holder for the second and third floor apartments of 1441 Hillcrest Road.  CI#1 positively identified a photo of ████████████ a male black, born XX/XX/1998, as who s/he knows to store kilogram quantities of methamphetamine and cocaine in **SUBJECT LOCATION 2**.  It should be noted that **SUBJECT LOCATION 1** is on the second floor and **SUBJECT LOCATION 2** is on the third floor directly above **SUBJECT LOCATION 1**, as reported by CI#1.

---

2 CD#1 is charged with violation ████████████████ and is cooperating with law enforcement in the hopes s/he will receive a lower sentence.  CD#1 has previously been convicted ████████████.  To date, further investigation has corroborated much of the information provided by CD#1 and has not shown any material information provided by CD#1 to be incorrect.  Therefore, I consider information provided by CD#1 to be reliable.

32.     In September 2021, agents/officers met with Cincinnati Police Officer Mark Bode, assigned to the Cincinnati Police Gang unit. PO Bode stated he has an ongoing investigation into BEACHER. PO Bode stated the Cincinnati Police Gang Unit has a confidential informant (hereinafter referred to as CI#2) who was purchasing fentanyl from BEACHER at **SUBJECT LOCATION 1**. Additionally, PO Bode stated CI#2 contacts BEACHER at phone number (513) 773-9371 (hereinafter referred to as BEACHER Phone #2) to arrange controlled purchases of fentanyl. PO Bode stated CI#2 is reliable in that s/he provided information on this case that was independently verified and proven true and correct. PO Bode stated CI#2 has also provided information and assistance on multiple independent cases which has been verified by fellow officers. CI#2 can identify marijuana, heroin, methamphetamine, and cocaine due to past contacts with the drugs as well as association with drug users and illegal drug traffickers. CI#2 has previously been convicted ████████████████████████████████████████████ ████████████████████████

33.     On October 21, 2022, agents/officers directed Confidential Information # 4 (CI#4) to place a call to BEACHER at BEACHER Phone #2. CI#4 was directed to attempt to purchase fentanyl from BEACHER. During the conversation, BEACHER agreed to meet CI#4 and sell CI#4 a quantity of fentanyl the following day. CI#4 has provided information and assistance on multiple independent cases which has been verified by the agents/officers and fellow officers. CI#4 can identify marijuana, heroin, methamphetamine, and cocaine due to past contacts with the drugs as well as association with drug users and illegal drug traffickers. CI#4 has no felony convictions and is cooperating with law enforcement for financial consideration.

34.     On October 22, 2021, agents/officers met with CI#4 to conduct a controlled fentanyl purchase from BEACHER. Prior to the controlled purchase, agents/officers searched CI#4 and CI#4's vehicle for contraband and U.S. Currency. Agents/officers did not locate any contraband or U.S. Currency during the search of CI#4 and CI#4's vehicle. Agents/officers directed CI#4 to place a one-party, consensually recorded phone call to BEACHER Phone #2. During the conversation, BEACHER told CI#4 to go to Colerain and W. Fork Avenue and call him back. Agents/officers provided CI#4 with an audio/video recording device and pre-recorded U.S. Currency to use for the controlled buy.

35.     While under the constant monitoring and control of agents/officers, CI#4 traveled to Colerain and W. Fork Avenue and placed a phone call to BEACHER Phone #2. During the conversation, BEACHER directed CI#4 to come to 1441 Hillcrest Road, and to pull into the parking lot. Agents/officers monitored CI#4 as s/he traveled to the meet location. CI#4 pulled to the parking lot that sits to the east of 1441 Hillcrest Road.  CI#4 again called BEACHER Phone #2 and BEACHER directed CI#4 to come to the rear of the building of 1441 Hillcrest Road. CI#4 exited his/her vehicle and met with BEACHER in the common entry doorway of 1441 Hillcrest Road by the laundry room on the first floor. BEACHER then exchanged 0.6 grams of cocaine and 0.61 grams of fentanyl for pre-recorded U.S. Currency. BEACHER then stated he is turning off BEACHER Phone #2 and provided CI#4 with the telephone number (302) 465-3603 (hereinafter referred to as BEACHER Phone #3).

36.     CI#4 then left 1441 Hillcrest Road and traveled to a neutral location while under constant monitoring and control of agents/officers.  Agents/officers met with CI#4 where CI#4 immediately surrendered the fentanyl and cocaine and the digital recording device. Agents/officers searched

13

CI#4 and CI#4's vehicle for contraband and U.S. Currency. Agents/officers did not locate any contraband or U.S. Currency during the search of CI#4 and CI#4's vehicle. The suspected fentanyl and cocaine were transported to the Hamilton County Coroner's Lab for analysis.

37.     On October 27, 2021, agents/officers met with CI#4 to conduct a controlled fentanyl purchase from BEACHER. Prior to the controlled purchase, agents/officers searched CI#4 and CI#4's vehicle for contraband and U.S. Currency. Agents/officers did not locate any contraband or U.S. Currency during the search of CI#4 or CI#4's vehicle. Agents/officers directed CI#4 to place a one-party, consensually recorded phone call to BEACHER Phone #3. During the conversation, BEACHER told CI#4 to meet him at the same location – 1441 Hillcrest Road. Agents/officers provided CI#4 with an audio/video recording device and pre-recorded U.S. Currency to use for the controlled buy.

38.     While under the constant monitoring and control of agents/officers, CI#4 traveled to 1441 Hillcrest Road.  Agents/officers monitored CI#4 as s/he traveled to the meet location. CI#4 pulled to the parking lot that sits to the east of 1441 Hillcrest Road.  CI#4 again called BEACHER Phone #3 and BEACHER stated he was about to arrive. During that time, JENNINGS arrived in a black 2020 Nissan Murano[3] and pulled into the same lot as CI#4. A few minutes later, BEACHER arrived in a tan 4 door vehicle and directed CI#4 to come to the laundry room of 1441 Hillcrest Road (structure containing **SUBJECT LOCATION 1** and **SUBJECT LOCATION 2**). While CI#4 was inside the laundry room of the structure containing **SUBJECT LOCATION 1** and **SUBJECT LOCATION 2**, another male white was also waiting on BEACHER. A few minutes

---

[3] As discussed below in paragraph 53, this 2020 black Nissan Murano with Ohio passenger plate JLN3541 and Vehicle Identification Number (VIN): 5N1AZ2AS3LN142724 has been identified herein as **TARGET VEHICLE #1.**

14

later, according to CI#4, BEACHER came down the steps and into the laundry room of the structure containing **SUBJECT LOCATION 1** and **SUBJECT LOCATION 2** with multiple ounces of methamphetamine in his hands. BEACHER provided the unknown male white with what CI#4 stated appeared to be an ounce of methamphetamine.

39.     BEACHER then attempted to hand CI#4 an ounce of methamphetamine, but CI#4 stated s/he was there to purchase a half ounce of fentanyl. BEACHER stated he had CI#4 confused with another customer and exited the laundry room of the structure containing **SUBJECT LOCATION 1** and **SUBJECT LOCATION 2** and went back to the stairs. During this interaction between CI#4 and BEACHER, ROBERSON operating a white 2018 Honda[4] pulled into the parking lot of 1441 Hillcrest Road.  A few minutes later, BEACHER came back down the stairs and entered the laundry room of 1441 Hillcrest Road where he provided a half ounce of fentanyl to CI#4. Agents/officers believe ROBERSON came to 1441 Hillcrest Road during the drug transaction to provide BEACHER with the fentanyl to complete the illegal drug transaction with CI#4.

40.     CI#4 then left 1441 Hillcrest Road and traveled back to the pre-determined neutral location while under constant monitoring and control of agents/officers.  Agents/officers met with CI#4 where CI#4 immediately surrendered the fentanyl and the digital recording device. Agents/officers searched CI#4 and CI#4's vehicle for contraband and U.S. Currency. No contraband or U.S. Currency was located during the search of CI#4 and CI#4's vehicle. The suspected fentanyl was transported to the Hamilton County Coroner's Lab for analysis.

---

[4] As discussed below in paragraph 78, this 2018 Honda is registered to ROBERSON and is identified herein as **TARGET VEHICLE #4.**

15

41.     On November 2, 2021, agents/officers met with CI#4 to conduct a controlled fentanyl purchase from BEACHER. Prior to the controlled purchase, agents/officers searched CI#4 and CI#4's vehicle for contraband and U.S. Currency. Agents/officers did not locate any contraband or U.S. Currency during the search of CI#4 and CI#4's vehicle. Agents/officers directed CI#4 to place a one-party, consensually recorded phone call to BEACHER Phone #2. During the conversation, BEACHER told CI#4 to meet him at the same location – 1441 Hillcrest Road. Agents/officers provided CI#4 with an audio/video recording device and pre-recorded U.S. Currency to use for the controlled buy. While under the constant monitoring and control of agents/officers, CI#4 traveled to 1441 Hillcrest Road.

42.     Agents/officers monitored CI#4 as s/he traveled to the meet location. CI#4 pulled to the parking lot that sits to the east of 1441 Hillcrest Road. CI#4 again called BEACHER Phone #2 and BEACHER said he was not at 1441 Hillcrest Road but stated his nephew would prepare the fentanyl and conduct the illegal drug transaction. Additionally, BEACHER directed CI#4 to exit the east parking lot and to pull to the parking lot directly behind 1441 Hillcrest Road. BEACHER called again from BEACHER Phone #2 and instructed the CI#4 to come to the laundry room of 1441 Hillcrest Road.  CI#4 walked to the laundry room of 1441 Hillcrest Road and met with an unknown male black, who provided a half ounce of fentanyl to CI#4 in exchange for the pre-recorded U.S. Currency.5 CI#4 then left the meet location and traveled to a neutral location while under constant monitoring and control of agents/officers.  Agents/officers met with CI#4 where CI#4 immediately surrendered the fentanyl and the digital recording device. Agents/officers searched CI#4 and CI#4's vehicle for contraband and U.S. Currency. No contraband or U.S.

---

5 CI#4 later identified the unknown male as ▮▮▮▮▮▮▮▮▮▮

Currency was located by the agents/officers during the search of CI#4 and CI#4's vehicle. The suspected fentanyl was transported to the Hamilton County Coroner's Lab for analysis.

43.     On November 9, 2021, agents/officers met with CI#4 to conduct a controlled fentanyl purchase from BEACHER. Prior to the controlled purchase, agents/officers searched CI#4 and CI#4's vehicle for contraband and U.S. Currency. No contraband or U.S. Currency was located during the search of CI#4 and CI#4's vehicle. Agents/officers directed CI#4 to place a one-party, consensually recorded phone call to BEACHER Phone #3. Below is part of the conversation between CI#4 and BEACHER:

CI#4: ██████████████████████

BEACHER: Listen

CI#4: ██████

BEACHER: it's supposed to be $1900 for real. 95 plus 95. If that's all y'all got then it's cool, but I got it you know yeah.

CI#4: ████████████████████

BEACHER: listen

CI#4: ██████

BEACHER: Hold on baby you moving too fast... wait a minute... wait one second…I'm across the bridge, I'm in K-Y. My girlfriend about to go in and grab this shit and she's about to drop me back off on Hillcrest. Don't pull up yet. Do what you got to do real quick and Imma let you know when I'm leaving out. She just went in this place real quick and take this paper in she gon be a couple minutes.

CI#4: ████████████

BEACHER: well yeah just do whatever yall about to do go ahead and do it real quick

CI: ████████████████████████████████████████████

BEACHER: alright

17

44.     Agents/officers conducting surveillance on BEACHER observed him riding in the passenger seat of a Silver Dodge Charger (hereinafter referred to as **TARGET VEHICLE #3**) with an unknown female black driver. Agents/officers observed **TARGET VEHICLE #3** pull to the curb at 419 W 12th Street Newport, Kentucky 41071. Agents/officers are familiar with this address due to previous physical and electronic surveillance on BEACHER. Agents/officers know 419 W 12th Street, Apartment 2, Newport, Kentucky 41071, is one of two current addresses for ███████████ a female black, born XX/XX/1979. Furthermore, ███████████ is the top caller on BEACHER's phone records with her cellular phone number identified as (513) 413-7778. Agents/officers observed a female black approach **TARGET VEHICLE #3** with a white shipping package and hand it to BEACHER.

45.     Agents/officers believe when BEACHER told CI#4 "my girlfriend about to go in and grab this shit and she's about to drop me back off on Hillcrest" BEACHER is telling CI#4 he is going to pick up the illegal narcotics then he will go to the meet location to facilitate the illegal narcotic transaction. Agents/officers believe BEACHER drove to 419 W 12th Street, Apartment 2, Newport, Kentucky 41071 to obtain the illegal narcotics to be used in the illegal drug transaction with CI#4. BEACHER called CI#4 and told him/her to meet him at the same location but to not pull into the parking lot yet.

46.     Agents/officers provided CI#4 with an audio/video recording device and pre-recorded U.S. Currency to use for the controlled buy with BEACHER. While under the constant monitoring and control of agents/officers, CI#4 traveled to the area of 1441 Hillcrest Road. Agents/officers monitored CI#4 as s/he traveled to the meet location. CI#4 pulled onto Hillcrest Road further down

the street from 1441 Hillcrest Road and waited until BEACHER arrived at the meet location. Agents/officers followed **TARGET VEHICLE #3** as BEACHER traveled from 419 W 12th Street, Newport, Kentucky 41071 to 1441 Hillcrest Road.

47.     At approximately 2:09 p.m., on November 9, 2021, agents/officers observed **TARGET VEHICLE #3** pull into the parking lot of 1441 Hillcrest Road.  A few minutes later, **TARGET VEHICLE #3** exited the parking lot of 1441 Hillcrest Road and drove away. Agents/officers were able to determine BEACHER was not in the passenger seat of **TARGET VEHICLE #3** as it drove away. Approximately 4 minutes later, JENNINGS' vehicle, **TARGET VEHICLE #1**, which was at 1441 Hillcrest Road prior to the controlled call to BEACHER, pulled out of the parking lot of 1441 Hillcrest Road.  Agents/officers were unable to determine if BEACHER and JENNINGS were inside **TARGET VEHICLE #1** due to the heavy window tint.

48.     At approximately 2:25 p.m., BEACHER called CI#4 from BEACHER Phone #3 and told him/her to pull into the parking lot of 1441 Hillcrest Road.  At approximately 2:46 p.m., agents/officers observed JENNINGS' **TARGET VEHICLE #1** arrive back at 1441 Hillcrest Road and pull to the east parking lot. At the same time, BEACHER called CI#4 and stated he (BEACHER) just pulled up to the location but needed to prepare the fentanyl for CI#4. At approximately 3:01 p.m., BEACHER called CI#4 from BEACHER Phone #3 and instructed CI#4 to come to the basement of 1441 Hillcrest Road.  At approximately 3:03 p.m., BEACHER met with CI#4 in the laundry room of 1441 Hillcrest Road where BEACHER provided an ounce of fentanyl to CI#4 in exchange for U.S. Currency.

49.     During the controlled buy, BEACHER stated his vehicle and telephones were stolen at the gas station on Hopple Street. CI#4 then left the meet location and traveled to a neutral location

19

while under constant monitoring and control of agents/officers. Agents/officers met with CI#4 where CI#4 immediately surrendered the fentanyl and the digital recording device. Agents/officers searched CI#4 and CI#4's vehicle for contraband and U.S. Currency. No contraband or U.S. Currency was recovered during the search of CI#4 and CI#4's vehicle. The suspected fentanyl was transported to the Hamilton County Coroner's Lab for analysis.

50.     Based on the information above, I submit that there is probable cause to believe that BEACHER, JENNINGS and ROBERSON use **SUBJECT LOCATION 1 and SUBJECT LOCATION 2** in furtherance of a drug trafficking conspiracy.

## B. Information Related to SUBJECT LOCATION 4

51.     On September 7, 2021**,** agents/officers appeared before Hamilton County Common Pleas Judge Tom Heekin who reviewed and signed a search warrant for historical records and electronic surveillance of JENNINGS Phone #1 and BEACHER Phone #1. Information lawfully obtained pursuant to this search warrant included subscriber information, call history, tower locations, and 30 days of Real Time Precision GPS Tracking (Phone PING) data collection for JENNINGS Phone #1 and BEACHER PHONE #1. Later that same day, pursuant to the search warrant, agents/officers learned JENNINGS Phone #1 was registered to International Mobile Equipment Identity (IMEI): 356706088631124.

52.      On September 9, 2021, agents/officers met with Judge Tom Heekin who authorized a search warrant for the Apple iCloud account belonging to JENNINGS Phone #1 and/or the IMEI 356706088631124.

53.     On September 9, 2021, agents/officers reviewed the lawfully obtained GPS Phone ping for JENNINGS Phone #1. The GPS phone ping showed the handheld device in the College Hill

neighborhood of Cincinnati. Agents/officers drove to the area and located a vehicle, bearing Ohio passenger plate JLN3541 registered to JENNINGS, parked, unoccupied, at 5400 Hamilton Avenue (**SUBJECT LOCATION 4**). A search of Ohio BMV records shows the Ohio passenger plate JLN3541 is a black 2020 Nissan Murano bearing Vehicle Identification Number (VIN): 5N1AZ2AS3LN142724 (**TARGET VEHICLE #1**).

54. On September 20, 2021, agents/officers received the Apple iCloud historical records attached to JENNINGS' handheld device. Agents/officers reviewed the photos from JENNINGS' handheld device and observed multiple photos where JENNINGS provides the address of **SUBJECT LOCATION 4** for his insurance and BMV registration.

55. Agents/officers also reviewed the FaceTime call log for JENNINGS' handheld device. Agents/officers learned that after JENNINGS received a phone call from CI#1 on September 2, 2021 (as discussed above in paragraph 25), JENNINGS placed a FaceTime call to an unidentified telephone number, then to co-conspirator BEACHER on BEACHER Phone #1, and then a FaceTime call to (404) 863-7483.

56. I know that the 404-area code is an Atlanta, Georgia area code. Agents/officers are aware Steffen ROBERSON previously lived in Atlanta, Georgia and often spends time there and in Cincinnati, Ohio. Agents/officers searched law enforcement databases for ROBERSON and learned ROBERSON has a recent address in Atlanta, Georgia at 889 Lenox Court NE, Atlanta, Georgia 30324. Additionally, agents/officers are aware the Federal Bureau of Investigation (FBI) agents executed a search warrant at ROBERSON's address in December 2019 at 270 17th Street NW, Atlanta, Georgia.

57.     Agents/officers submitted an administrative subpoena for historical toll records for (404) 863-7483.   On September 23, 2021, agents/officers received the historical tolls records and reviewed the top incoming/outgoing calls for (404) 863-7483. Multiple illegal drug traffickers, identified in previous illegal drug investigations known by agents/officers to be associated to ROBERSON's Drug Trafficking Organization (DTO), were in the top callers for (404) 863-7483, including Quinton JENNINGS on JENNINGS's Phone #1, and Alton BEACHER on BEACHER Phone #1. Based on the foregoing, agents/officers believe ROBERSON is utilizing (404) 863-7483 (hereinafter referred to as ROBERSON Phone #1).

58.     On September 22, 2021, agents/officers met with Judge Tom Heekin who reviewed and authorized a GPS Tracker to be placed on **TARGET VEHICLE #1.** On September 24, 2021, agents/officers reviewed the lawfully obtained GPS Phone ping information for JENNINGS Phone #1 and learned JENNINGS' handheld device was in the College Hill neighborhood of Cincinnati. Agents/officers drove to **SUBJECT LOCATION 4** and located **TARGET VEHICLE #1** parked outside the common entry door of **SUBJECT LOCATION 4**. Agents/officers lawfully installed an electronic GPS tracking device on **TARGET VEHICLE #1.**

59.     On September 30, 2021, agents/officers reviewed the lawfully installed GPS tracking device for **TARGET VEHICLE #1** and learned **TARGET VEHICLE #1** stayed overnight at **SUBJECT LOCATION 4**.I know, based on my training and experience, that drug traffickers often store drugs, drug proceeds and other items related to drug trafficking in places that they reside.

60.     Additionally, as discussed below in paragraph 104, a Source of Information has provided reliable information that JENNINGS uses **SUBJECT LOCATION 4** to conduct drug

transactions. Based on this information, I submit that there is probable cause to believe that JENNINGS resides at **SUBJECT LOCATION 4** uses that location in furtherance of a drug trafficking conspiracy with JENNINGS and ROBERSON.

### C. Information related to SUBJECT LOCATION 5

61. A further review of the GPS tracking device for **TARGET VEHICLE #1** showed that **TARGET VEHICLE #1** traveled to the iStorage located at 888 W North Bend Road Cincinnati, Ohio 45224 (structure containing **SUBJECT LOCATION 5**). Additionally, agents/officers obtained information that from September 24, 2021, through September 30, 2021, **TARGET VEHICLE #1** had traveled to the iStorage located at 888 W. North Bend Road (structure containing **SUBJECT LOCATION 5**) four separate times.

62. On October 1, 2021, DEA TFO Corey Bonner, and his partner K9 "Duece" served iStorage (structure containing **SUBJECT LOCATION 5**) with an administrative subpoena. Agent Bonner learned that JENNINGS has had Storage Unit #1022 at 888 West North Bend Road, Cincinnati, Ohio 45224 (**SUBJECT LOCATION 5**) registered in his name since December of 2020.

63. On October 1, 2021, TFO Bonner and his K9 partner, "Duece," conducted an open-air sniff of the exterior of **SUBJECT LOCATION 5**. TFO Bonner told agents/officers that K9 "Duece" gave a positive alert to the odor of illegal narcotics emitting from **SUBJECT LOCATION 5**. TFO Bonner noted K9 "Duece" did not alert in any areas other than the exterior of **SUBJECT LOCATION 5**.

64. Due to the ongoing investigation, officers/agents did not execute a search warrant at **SUBJECT LOCATION 5** at the time of the open-air sniff on October 1, 2021. On November 11, 2021, TFO Bonner and his K9 Partner "Duece" conducted another open-air sniff of the exterior

23

of **SUBJECT LOCATION 5**. TFO Bonner told the agents/officers that K9 "Duece" gave a positive alert to the odor of illegal drugs emitting from **SUBJECT LOCATION 5**. TFO Bonner noted K9 "Duece" did not alert in any areas other than the exterior of unit #1022.

65.     TFO Bonner and his K-9 Partner "Duece" are certified through the State of Ohio in drug detection. The K-9 "Duece" is certified as a Drug Detection dog for 5 odors: Marijuana, Cocaine, Methamphetamine, Ecstasy, and Heroin. The K-9 officer and his K-9 Partner are currently assigned to the Cincinnati Police Narcotics Unit and have proven to be true and reliable with the numerous seizures of illegal drugs as well as the arrest and conviction of individuals involved in the trafficking of illegal drugs.

66.     Based on my training and experience, I submit that there is probable cause to believe JENNINGS utilizes **SUBJECT LOCATION 5** in furtherance of a drug conspiracy with BEACHER and ROBERSON.

   **D.   Information Related to SUBJECT LOCATION 6**

67.     During the week of September 19th, 2021**,** agents/officers reviewed law enforcement databases and learned that the license plate of Target Vehicle #2 was read by a license plate reader parked outside of the apartment complex, the Landings at Beckett Ridge, 8330 Landmark Court, West Chester, Butler County, Ohio 45069 (structure containing **SUBJECT LOCATION 6**).

68.     I served the leasing office for The Landings at Beckett Ridge with an administrative subpoena for a tenant list.  I was informed that ▮▮▮▮▮▮▮▮ is currently leasing 8330 Landmark Court, Apartment 206, West Chester, Ohio 45069 (**SUBJECT LOCATION 6**). Additionally, ▮▮▮▮▮▮▮▮ provided the telephone number (513) 413-7778 to The Landings at Beckett Ridge apartment complex main office. A search of historical toll records conducted by agents/officers

24

shows that ███████████ telephone number (513) 413-7778 is a top caller of BEACHER Phone #1.

69.     On September 23, 2021, agents/officers met with Butler County Common Pleas Judge Daniel Haughey who authorized the installation of an electronic GPS tracking device to be placed on Target Vehicle #2.

70.     On September 24, 2021, agents/officers reviewed the lawfully obtained GPS ping data for BEACHER Phone #1 and learned the handheld device was in the City of West Chester, Ohio near 8330 Landmark Court, Apartment 206 (**SUBJECT LOCATION 6**). Agents/officers drove to the area of **SUBJECT LOCATION 6** and located Target Vehicle #2.  At 4:02 a.m., agents/officers installed an electronic GPS tracking device on Target Vehicle #2.

71.     On October 13, 2021, agents/officers reviewed the lawfully installed GPS tracking device on Target Vehicle #2 and observed the GPS tracking device indicated that Target Vehicle #2 was at Enterprise Rent-A-Car at 8740 Montgomery Road. Agents/officers are aware that Target Vehicle #2 was originally rented from Enterprise Rent-A-Car at 8740 Montgomery Road.

72.     On October 14, 2021, agents/officers drove to BEACHER's residence, **SUBJECT LOCATION 6**, and observed a silver Dodge Charger bearing Alabama license plate 11KY153 (**TARGET VEHICLE #3**).  Results from the search of a Law Enforcement database indicated the vehicle was registered to EAN Holdings, which agents/officers know to be an umbrella company for Enterprise Rent-A-Car. Agents served an administrative subpoena to Enterprise for the silver Dodge Charger bearing Alabama license plate 11KY153. Enterprise provided the renter's information of the silver Dodge Charger as BEACHER born XX/XX/1979. BEACHER provided Enterprise with the telephone numbers (513) 773-9371 and (513) 413-7778 (previously identified

as ▓▓▓▓▓▓▓▓▓ telephone number), the address 898 Walnut Street Cincinnati, Ohio 45202, and Email address ▓▓▓▓▓▓▓▓▓

73. At approximately 10:04 a.m., agents/officers observed BEACHER and a small child exit the second-floor landing of 8330 Landmark Court (structure containing **SUBJECT LOCATION 6**). BEACHER and the small child made their way over to **TARGET VEHICLE #3**. BEACHER got into the driver's seat of **TARGET VEHICLE #3** and pulled away from the structure containing **SUBJECT LOCATION 6**. Agents/officers followed BEACHER in **TARGET VEHICLE #3** as BEACHER arrived at a daycare center in the City of Fairfield.

74. Shortly after leaving the daycare center, coincidently, a Fairfield Police Uniform car was in traffic behind BEACHER in **TARGET VEHICLE #3**. BEACHER turned off of Ohio State Route 4 and pulled behind a store front located at 1137 Magie Avenue, where agents/officers stated BEACHER appeared to be looking over his shoulder attempting to identify the location of the uniform Law Enforcement officer. Once the uniform officer was out of view of BEACHER**,** BEACHER traveled back onto Ohio State Route 4 and continued South on Ohio State Route 4. Agents/officers decided to terminate surveillance during this time period.

75. As detailed above in paragraph 72, in addition to **SUBJECT LOCATION 6**, ▓▓▓▓▓▓ ▓▓▓▓ is also affiliated with the address 419 W 12th Street, Apartment 2, Newport, Kentucky 41071. On November 9, 2021, just prior to conducting a drug transaction with CI#4, BEACHER told CI#4 that his "girlfriend about to go in and grab this shit and she's about to drop me back off on Hillcrest." Consistent with BEACHER's statement to CI#4, and prior to BEACHER's drug transaction with CI#4 on November 9, 2021, agents/officers observed a black female approach **TARGET VEHICLE #3** with a white shipping package and hand it to BEACHER while

26

**TARGET VEHICLE #3** was parked in the vicinity of 419 W 12th Street, Newport, Kentucky address.

76.     Based on my training and experience, I know that drug traffickers use multiple residences to store illegal drugs and drug proceeds and other evidence of drug trafficking. Based on the transaction with the CI#4 on November 9, 2021, and BEACHER's evasive conduct toward law enforcement on October 14, 2021, shortly after leaving **SUBJECT LOCATION 6**, I submit that there is probable cause to believe that BEACHER is using **SUBJECT LOCATION 6** to conduct drug trafficking activity in support of his conspiracy with JENNINGS and ROBERSON.

### E.  <u>Information Related to SUBJECT LOCATIONS 3, 7 and 8</u>

77.     On October 5, 2021, agents/officers appeared before Hamilton County Common Pleas Judge Tom Heekin who reviewed and signed a search warrant for historical records and electronic surveillance for ROBERSON Phone #1. Information lawfully obtained pursuant to this search warrant included subscriber information, call history, tower locations, and 30 days of Real Time Precision GPS Tracking (Phone PING) data collection for the physical telephone handset registered to telephone number (404) 863-7483. On October 6, 2021, agents/officers received historical data belonging to ROBERSON Phone #1 and learned the IMEI for the handheld device is 310410349684800 and identified the handheld as an Apple iPhone 11.

78.     On October 6, 2021, agents/officers reviewed lawfully obtained GPS ping data for ROBERSON Phone #1. From surveillance, agents/officers are familiar with a house at the corner of William P. Dooley Bypass and Old Ludlow Avenue that JENNINGS frequented in **TARGET VEHICLE #1**. The GPS Phone Ping radius for ROBERSON PHONE #1 showed the Intersection of William P Dooley and Old Ludlow Ave was within the 98-meter ping radius of the phone.

27

Agents/officers drove to the area and located a white 2018 Honda Accord, bearing Texas temporary tag 28680K5 registered to Steffen ROBERSON of 6028 Lantana Avenue Cincinnati, Ohio 45224 (**TARGET VEHICLE #4**), parked in front of 3920 Old Ludlow Avenue (**SUBJECT LOCATION 8**).

79.     At 10:10 a.m., agents/officers observed a heavyset male black at **SUBJECT LOCATION 8** and get into the driver's seat of the white 2018 Honda Accord and drive away. The white 2018 Honda Accord then returned to **SUBJECT LOCATION 8** at 10:18 a.m.   At 11:50 a.m., agents/officers observed a male black matching the physical description of ROBERSON exit **SUBJECT LOCATION 8** and waive to a silver Nissan Altima, bearing Ohio passenger plate JEJ6092 registered to a ██████████████████████████ that had been parked on Old Ludlow Avenue. The silver Nissan pulled forward and the male black, believed to be ROBERSON, conducted what agents/officers believed to be, based on their training and experience, a hand-to-hand narcotics transaction with a female black in the silver Nissan, exchanging what agents/officers believed to be marijuana for U.S. Currency.

80.     At 4:46 p.m. that same day, agents/officers reviewed the GPS ping data for ROBERSON Phone #1 and observed that the handheld device was within 134 meters of the intersection of Trapp Lane and Trapp Court in the City of Mount Healthy. Agents/officers are familiar with a ████████ ████████ the mother of Steffen ROBERSON, who lives at 10046 Trapp Lane Cincinnati, Ohio 45231.  10046 Trapp Lane was within the 134 meter radius of the GPS ping data for ROBERSON Phone #1.

81.     At approximately 8:07 p.m., the handheld device for ROBERSON Phone #1 was observed by agents/officers traveling westbound on I-275 and arrived at approximately 8:22 p.m. near the area of the Hollywood Casino in Lawrenceburg, Indiana.

82.     The following day, October 7, 2021, agents/officers met with Indiana Gaming Agents for Hollywood Casino in Lawrenceburg, Indiana. The Indiana Gaming Agents, along with agents/officers, reviewed camera footage from October 6, 2021, and identified ROBERSON entering the Lawrenceburg Indiana Hollywood Casino at 8:24 p.m.   The photo showing ROBERSON entering the Casino, depicted below, was captured shortly after the GPS ping data for ROBERSON Phone #1 indicated a location near the area of the Hollywood Casino in Lawrenceburg, Indiana. It should be noted, the heavy-set male at the top of the photo appears to be the same individual that agents/officers observed get into the white Honda Accord at **SUBJECT LOCATION 8** on the morning of October 6, 2021. The male black in the white under shirt and black short ███ button up observed in the photograph below is Steffen ROBERSON.



83.    Agents/officers showed the above photo from the Lawrenceburg Hollywood Casino to Confidential Informant #3 (CI#3) who is familiar with the ROBERSON DTO.    CI#3 stated "worm" is the male black with the white shirt and black button up. CI#3 also identified the heavy-set male as "███████ and provided two social media accounts for "███████ Facebook "███████ ███████ with ID: 100057994076545 and Facebook "███████████ with ID: 100072616819413. Agents/officers searched law enforcement databases and identified "███████ as ███████████ a male, black, born August 16, 1984. It should be noted ███████████ refers to himself as "███████ multiple time on both Facebook pages "███████████ and "███████████

30

84.     Agents/officers searched the Hamilton County Clerk of Courts records and learned ████ ██ has previous felony convictions for trafficking in heroin, trafficking in cocaine, possession of heroin, possession of cocaine, weapons under disability, and permitting drug abuse.

85.     CI#3 is reliable in that s/he provided information on this case that was independently verified and proven true and correct. CI#3 has also provided information on this case and others that has been verified by the officers and fellow officers.

86.     Additionally, on October 7, 2021, agents/officers reviewed the GPS ping data for ROBERSON Phone #1 and observed that at 1:30 p.m. the handheld device for ROBERSON Phone #1 was in the area of the Hollywood Casino in Lawrenceburg, Indiana. Agents/officers drove to the area of the Lawrenceburg Hollywood Casino and observed **TARGET VEHICLE #4** parked in the parking garage. Agents/officers went inside the casino and observed the previously identified ████████ and another male black matching the physical description of ROBERSON but ROBERSON was wearing a face mask while inside the casino. Agents/officers continued conducting surveillance of **TARGET VEHICLE #4** and at approximately 2:40 p.m., ██ and the male black, believed to be ROBERSON, entered into **TARGET VEHICLE #4**, and exited the Lawrenceburg Hollywood casino. At approximately 2:46 pm., the GPS phone ping indicated the handheld device for ROBERSON Phone #1 had left the vicinity of the Lawrenceburg Hollywood Casino and was moving with **TARGET VEHICLE #4**. Agents/officers followed **TARGET VEHICLE #4** away from the vicinity of the Hollywood Casino and observed that **TARGET VEHICLE #4** was operating, at times 5 to 10 miles an hour under the speed limit while traveling east on Interstate-275. Based on agents'/officers' training and experience, agents/officers know that often times illegal narcotics traffickers will drive in the above described manner in an effort

31

to identify law enforcement vehicles who maybe attempting to conduct surveillance on their vehicles. Often times illegal narcotic traffickers will drive in this manor before or after they are about to travel to a secure location where they will store and distribute illegal narcotics and illegal proceeds of their drug trafficking organizations.

87.     Agents/officers were able to maintain a visual and followed **TARGET VEHICLE #4** as it traveled to the City of Mount Healthy, Ohio. Agents/officers observed **TARGET VEHICLE #4** enter into the driveway of a single-family home located at 7216 Park Avenue Mount Healthy, Ohio 45231 (**SUBJECT LOCATION 3**). Throughout surveillance ROBERSON Phone #1 moved with **TARGET VEHICLE #4.**

88.     On October 8, 2021, agents/officers reviewed the GPS ping data for ROBERSON Phone #1 and learned at 2:18 p.m. the handheld device for ROBERSON Phone #1 was in the area of **SUBJECT LOCATION 3**. Agents/officers drove to the area of **SUBJECT LOCATION 3** and observed **TARGET VEHICLE #4** parked in the driveway of **SUBJECT LOCATION 3**. At approximately 3:10 p.m., **TARGET VEHICLE #4** backed out of the driveway of **SUBJECT LOCATION 3** and pulled away. It should be noted, agents/officers believe the heavily tinted vehicle, **TARGET VEHICLE #4**, was occupied the entire time agents/officers were conducting surveillance in the area of **SUBJECT LOCATION 3**. As **TARGET VEHICLE #4** pulled away from **SUBJECT LOCATION 3**, agents/officers were able to determine a slim built male black was the only occupant of the vehicle. Due to heavy traffic in the area agents/officers were unable to maintain a visual on **TARGET VEHICLE #4** as it traveled away from **SUBJECT LOCATION 3**.

89.    On October 13, 2021, agents/officers reviewed the GPS Phone Pings for ROBERSON Phone #1 and learned that at 10:36 a.m. the handheld device for ROBERSON Phone #1 was in the area of **SUBJECT LOCATION 3**. Agents/officers drove to the area of **SUBJECT LOCATION 3** and observed **TARGET VEHICLE #4** parked in the driveway of **SUBJECT LOCATION 3**. At approximately 11:00 a.m., agents/officers observed ███████ and Steffen ROBERSON exit **SUBJECT LOCATION 3**. ROBERSON walked to **TARGET VEHICLE #4** and got into the driver's seat of **TARGET VEHICLE #4** while ███████ got into the passenger seat. Agents/officers followed **TARGET VEHICLE #4** as it traveled to the Colerain Corner Carryout located at 4406 Colerain Ave Cincinnati, Ohio 45203.

90.    Agents/officers observed a male black exit a black four door vehicle and get into the backseat of **TARGET VEHICLE #4**. The unknown male remained inside **TARGET VEHICLE #4** for approximately one minute. The unknown male then exited **TARGET VEHICLE #4** and returned to his black four door vehicle. Agents/officers noted neither ROBERSON nor ██ exited **TARGET VEHICLE #4** at the Colerain Corner Carryout.

91.    Based on my training and experience and conversations with other agents/officers, I know that illegal narcotic traffickers often use vehicles to facilitate and conceal their illegal narcotic trafficking. I also know illegal narcotic transactions usually only last a few minutes. Based on my training and experience, I believe the unknown male that got into **TARGET VEHICLE #4** completed an illegal narcotic transaction with ROBERSON and ██ Additionally, **TARGET VEHICLE #4** drove directly from **SUBJECT LOCATION 3** to the Colerain Corner Carryout. Based on these facts, and my training and experience, I believe **SUBJECT LOCATION 3** is a stash location for ROBERSON.

33

92.     On October 25, 2021, agents/officers reviewed the GPS tracking device for **TARGET VEHICLE #1** and observed the GPS tracking device for **TARGET VEHICLE #1** was located at **SUBJECT LOCATION 8**. Agents/officers drove to the area and observed **TARGET VEHICLE #4** also parked in front of **SUBJECT LOCATION 8**. At 11:40 a.m., via electronic monitoring and physical surveillance, agents/officers observed a male black, later identified as JENNINGS, exit **SUBJECT LOCATION 8**, and approach a silver Honda Odyssey minivan with Ohio license plates JGC3560. JENNINGS conducted what appeared to be, based on agents'/officers' training and experience, a hand-to-hand drug transaction with the occupants of the silver Honda Odyssey. JENNINGS then walked back inside **SUBJECT LOCATION 8**. At 12:48 p.m., agents/officers observed JENNINGS exit **SUBJECT LOCATION 8** and get into the driver's seat of **TARGET VEHICLE #1** and exit the area of **SUBJECT LOCATION 8**. The lawfully installed GPS tracking device on Target Vehicle #1 showed JENNINGS travel to the BP gas station at Spring Grove Ave and Hoffner Street.

93.     On November 2, 2021, agents/officers reviewed the GPS ping data for ROBERSON Phone #1 and learned that at approximately 4:23 p.m., the handheld device for ROBERSON Phone #1 was in Butler County, Ohio near the intersections of Muhlhauser Road and State Route 747, Princeton-Glendale Road. Agents/offices drove to the area and observed Target Vehicle #4 parked in the driveway of 9563 Conservancy Place, West Chester Township, Ohio 45011.   At approximately 4:25 p.m., agents/officers observed two male blacks get into **TARGET VEHICLE #4** and pull out of the driveway of 9563 Conservancy Place. Agents/officers followed **TARGET VEHICLE #4** as it traveled southbound into Hamilton County, Ohio, eventually losing sight of **TARGET VEHICLE #4**. A review of GPS ping data for ROBERSON Phone #1 revealed the

handheld device traveled away, southbound, from 9563 Conservancy Place with **TARGET VEHICLE #4** eventually stopped in the area of 10046 Trapp Lane at approximately 4:48 p.m.

94.     On November 3, 2021, agents/officers met with Butler County Common Pleas Judge Gregory Howard who authorized a GPS tracking warrant for **TARGET VEHICLE #4.**

95.     On November 4, 2021, at 12:30 p.m., Agents reviewed the lawfully obtained GPS ping data for ROBERSON Phone #1 and learned the handheld device was in West Chester Township. Agents located **TARGET VEHICLE #4** in the driveway of 9564 Conservancy Place. At 3:47 p.m., agents/officers observed ROBERSON get into **TARGET VEHICLE #4** and pull away from 9564 Conservancy Place.  Agents/officers were unable to maintain visual of **TARGET VEHICLE #4** due to traffic. At 4:32 p.m., GPS ping data showed ROBERSON Phone #1 in the area of Daly Road and Grenada Drive. At approximately 4:45 pm., agents/officers located **TARGET VEHICLE #4** in the driveway of 8685 Daly Road, Cincinnati, Ohio 45231 (**SUBJECT LOCATION 7)**. A search of Hamilton County auditor shows ██████████ Steffen ROBERSON's mother, as the owner of **SUBJECT LOCATION 7** in addition to 10046 Trapp Lane. **SUBJECT LOCATION 7** was transferred into ██████████ name on October 29, 2021.

96.     On November 5, 2021, agents/officers met with Hamilton County Common Pleas Judge Terry Nester who renewed a GPS phone ping authorization and authorized a pen register warrant for ROBERSON Phone #1.

97.     On November 8, 2021, at approximately 12:59 p.m., agents/officers reviewed the lawfully obtained GPS phone pings of ROBERSON Phone #1 and learned the handheld device was in Springfield Township neighborhood of Cincinnati near the intersection of Grenada and Daly Road.

Agents/officers drove to the area and observed **TARGET VEHICLE #4** parked in the driveway of **SUBJECT LOCATION 7.** Agents/officers observed ROBERSON and ███████ standing in the yard of **SUBJECT LOCATION 7** and then ROBERSON go back inside.

98.     At approximately 1:47 p.m., a gray Ford sedan arrived in the area and pulled into the driveway of **SUBJECT LOCATION 7**. An unidentified male black, wearing a teal hoodie, teal sweatpants, and a teal ball cap, exited from the passenger seat of the Ford sedan and walked to the front of **SUBJECT LOCATION 7**. The Ford, operated by an unidentified female black, backed out of the driveway and parked on the street in front of **SUBJECT LOCATION 7**. Moments later, the male dressed in teal clothing exited **SUBJECT LOCATION 7** carrying a black backpack bearing a white Nike symbol. The backpack appeared to be partially filled and closed. The male walked to the passenger side of the gray Ford and appeared to place the backpack in the back seat. The male then leaned into the passenger side of the vehicle for a few seconds. The male then exited the passenger side of the vehicle and returned to the front door of **SUBJECT LOCATION 7** carrying the backpack which appeared to now be empty with the flap to the backpack open.

99.     Based on Agents/officers training and experience, Agents/officers believe the unknown male purchased a large quantity of illegal drugs from ROBERSON at **SUBJECT LOCATION 7** and used the backpack to transport the illegal drugs to his vehicle. The male then empties the illegal drugs into the vehicle and returned the backpack inside **SUBJECT LOCATION 7**.

100.    Approximately 10 minutes later, **TARGET VEHICLE #4** pulled out of the driveway of **SUBJECT LOCATION 7** and drove south on Daly Road. Agents/officers were unable see who got into **TARGET VEHICLE #4** or maintain visual due to erratic. At 2:58 p.m., a white Lexus bearing Ohio Plate JJP9517 parked in front of **SUBJECT LOCATION 7**. The driver exited the

36

white Lexus and went inside **SUBJECT LOCATION 7**. A short time later, the male black then exited **SUBJECT LOCATION 7** and left the area. At approximately 3:30 p.m., agents/officers observed **TARGET VEHICLE #4** and the white Lexus bearing Ohio license plate JJP9517 both parked in the driveway of **SUBJECT LOCATION 7**. Agents/officers observed the unknown male and ROBERSON come from the area of the front door of **SUBJECT LOCATION 7** and both get into the white 2018 Lexus in the driveway. Approximately a minute later, ROBERSON exited the white 2018 Lexus and got into **TARGET VEHICLE #4.** ROBERSON then pulled out of the driveway of **SUBJECT LOCATION 7** and left the area. As previously mentioned, it is agents'/officers' training and experience that illegal narcotic traffickers often use vehicles to facilitate and conceal their illegal narcotic trafficking. Agents/officers know illegal narcotic transactions usually only last a few minutes. Agents/officers believe the unknown male and ROBERSON both got into the white 2018 Lexus complete an illegal narcotic transaction. Furthermore, while conducting surveillance of **SUBJECT LOCATION 7.**

101.    Additionally on November 8, 2021, Agents/officers reviewed the GPS phone pings for ROBERSON Phone #1 and learned ROBERSON Phone #1 traveled to Lima, Ohio and arrived at approximately 5:15 p.m. At approximately 7:30 p.m., ROBERSON Phone #1 appeared to leave Lima, Ohio and travel back to the City of Cincinnati, Ohio. The handheld device showed ROBERSON traveled to **SUBJECT LOCATION 3**. **SUBJECT LOCATION 3** is a previously identified stash location for ROBERSON based on physical surveillance and information provided by the CD#1.  It is agents'/officers' training and experience that Lima, Ohio is a common meeting location for illegal narcotic traffickers bringing illegal narcotics from Detroit, Michigan. Lima, Ohio is almost exactly a 2-hour drive from both Cincinnati, Ohio and Detroit, Michigan.

Agents/officers are aware that Detroit, Michigan is a common source city for illegal narcotics. It is agents'/officers' belief that ROBERSON drove to Lima, Ohio to purchase an unknown quantity of illegal narcotics. ROBERSON then traveled directly to **SUBJECT LOCATION 3**, what is believed by agents/officers to be a drug stash location. According to the GPS Phone Pings for ROBERSON Phone #1, ROBERSON left **SUBJECT LOCATION 3** and then traveled to **SUBJECT LOCATION 7**. Based on surveillance and information provided by FBI SOI Agents/officers believes ROBERSON is utilizing these **SUBJECT LOCATION 3** and **SUBJECT LOCATION 7** to further his illegal drug trafficking network.

**F. Additional Information Provided by a Source of Information related to SUBJECT LOCATION 3 and SUBJECT LOCATION 4**

102.    Between October 27,2021 and October 29, 2021, FBI Agents and Hamilton County Ohio Regional Narcotics Unit (RENU) Agents interviewed an individual who provided information to agents/officers about the ROBERSON DTO. The source of information (SOI[6]) provided ROBERSON's telephone number as (404) 863-7483, previously identified as ROBERSON Phone #1. The SOI stated ROBERSON acquires kilograms of heroin/fentanyl from a drug connection located in Baltimore, Maryland. The SOI stated ROBERSON is supposed to go back to Baltimore soon to pick up two kilograms of black in color heroin/fentanyl that are very potent. Agents/officers reviewed the lawfully obtained GPS Phone data for ROBERSON Phone #1 and learned that on September 16, 2021, ROBERSON Phone #1 traveled to Baltimore, Maryland.

---

6 The SOI is currently charged with the following offenses: ██████████████████████████████
██████████████████████████████ The SOI has previously been convicted of ████████████████████
████████████████████████ To date, investigation has corroborated much of the information provided by CHS-1 and has not shown any material information provided by the SOI to be incorrect. Therefore, I consider the SOI to be reliable.

103.     The SOI stated ROBERSON stores illegal drugs at **SUBJECT LOCATION 3**. It should be noted that **SUBJECT LOCATION 3** is one of the locations agents/officers have observed ROBERSON coming and going from **SUBJECT LOCATION 3** and conduct drug transaction after leaving. The SOI stated **SUBJECT LOCATION 3** has multiple surveillance cameras at the location and that ROBERSON is very careful who he brings to **SUBJECT LOCATION 3**. Additionally, the SOI stated ROBERSON often drives low key cars, like Hondas, while in Cincinnati, Ohio. Agents/officers know ROBERSON is currently utilizing a white Honda **(TARGET VEHICLE #4)**.

104.     The SOI stated JENNINGS, a.k.a. "Smoke," primarily sells cocaine and marijuana. The SOI states JENNINGS delivers illegal drugs to fellow co-conspirators for ROBERSON. Additionally, the SOI stated JENNINGS stores illegal drugs inside an apartment at 5400 Hamilton Avenue (structure containing **SUBJECT LOCATION 4**). As discussed above, Agents/officers are aware JENNINGS provides **SUBJECT LOCATION 4** to the Ohio Bureau of Motor Vehicles. Additionally, since September of 2021, agents/officers have observed JENNINGS come and go numerous times from the common entry door of 5400 Hamilton Avenue (structure containing **SUBJECT LOCATION 4**) and know that JENNINGS has stayed overnight at that address regularly.

### G. Final Controlled Purchase on November 11, 2021

105.     Additionally, On November 11, 2021, at 1:06 p.m. agents/officers directed CI#4 to place a call to BEACHER Phone #3. In the conversation, BEACHER tells CI#4 that he's on his way to pick up a "Bird" and will bet at structure containing **SUBJECT LOCATION 1** and **SUBJECT LOCATION 2** in an hour. Agents/officers are familiar with the term "bird" to mean a kilogram

of illegal drugs. Agents/officers observed BEACHER exit the common entry door of **SUBJECT LOCATION 6** and get into **TARGET VEHICLE #3.** Agents/officers followed **TARGET VEHICLE #3** to a PNC Bank located at 11100 Reading Road Cincinnati, Ohio 45241. CI#4 sent an electronic message to BEACHER Phone #3 asking for the price of fentanyl and cocaine. BEACHER responded with a corresponding price and then called CI#4 and stated he will be at the meeting location (structure containing **SUBJECT LOCATION 1 and SUBJECT LOCATION 2**) in 20 minutes.

106.     Prior to the controlled purchase, Agents/officers searched CI#4 and CI#4's vehicle for contraband and U.S. Currency with nothing found. Agents/officers provided CI#4 with an audio/video recording device and U.S. Currency to utilize for the controlled buy. While under the constant monitoring and control of officers/agents, CI#4 traveled to the parking lot of the structure containing **SUBJECT LOCATION 1** and **SUBJECT LOCATION 2.** At 2:25 p.m. BEACHER told CI#4 that he is on his way. At 2:57 p.m. Agents/officers following BEACHER in **TARGET VEHICLE** #3 followed him as he pulled in front of **SUBJECT LOCATION 8.** Agents/officers were unable to maintain a visual on BEACHER while he was at **SUBJECT LOCATION 8**. At the same time BEACHER was at **SUBJECT LOCATION 8**, BEACHER called CI#4 and stated another male will provide CI#4 with the fentanyl. BEACHER then instructed CI#4 to go into the laundry room of the structure containing **SUBJECT LOCATION 1** and **SUBJECT LOCATION 2**.

107.     CI#4 exited their vehicle and walked into the laundry room where the CI#4 met an unknown male black. The unknown male black exchange fentanyl with CI#4 for U.S. Currency. CI#4 then left the meet location and traveled to a neutral location while under constant monitoring

and control by agents/officers. While traveling to the neutral location, CI#4 received a phone call from BEACHER Phone #3 stating he instructed the unknown male to provide CI#4 with a heavy amount of fentanyl and asked if the unknown male provided CI#4 with a telephone number. CI#4 told BEACHER that s/he did not get a phone number from the unknown male. Agent/officers are aware often times illegal drug dealers will have other illegal drug dealers' complete transaction for them. Illegal drug traffickers don't like when these other illegal drug dealers provide their phone numbers in an attempt to steal future drug sales.

108. At the neutral site agents/officers met with CI#4 where CI#4 immediately surrendered the fentanyl and the digital recording device. Agents/officers searched CI#4 and CI#4's vehicle for contraband and U.S. Currency with nothing found. The suspected fentanyl and cocaine were transported to the Hamilton County Coroner's Lab for analysis. Agents/officers believe when BEACHER told CI#4 he was picking up the "bird" he was on his way to purchase another kilogram of illegal drugs. Agents/officers observed BEACHER go to a PNC bank and then travel to **SUBJECT LOCATION 8**. It should be noted, BEACHER operating Target Vehicle #3 drove down small side street and conducted U-turns in the middle of the road before landing at **SUBJECT LOCATION 8**. As previously mentioned, it is agents/officers experience drug traffickers will often drive in an erratic manner or take indirect routes, often through neighborhoods and side streets, in an attempt to detect surveillance units. Often illegal drug traffickers do this before going to their residence and/or illegal drug stash locations such as **SUBJECT LOCATION 8**. Furthermore, while BEACHER didn't provide CI#4 with the fentanyl he did tell CI#4 that he was on his way to pick up what agents/officers believe to be an illegal drug,

41

traveled to a PNC bank, and then one of ROBERSON's stash locations, **SUBJECT LOCATION 8,** after driving erratically.

109.    Based on all above facts, I believe ROBERSON, JENNINGS, and BEACHER are currently involved in an illegal and ongoing conspiracy to store and distribute methamphetamine, cocaine, and fentanyl in the Greater Cincinnati area.

110.    Based on electronic and physical surveillance, I believe ROBERSON uses **TARGET VEHICLE #4** to store, distribute, and transport narcotics, weapons, and proceeds from the sale of narcotics. I further believe ROBERSON uses **SUBJECT LOCATION 3** and **SUBJECT LOCATION 8** to facilitate an ongoing illegal drug trafficking business.

111.    I believe JENNINGS uses **TARGET VEHICLE #1** to store, distribute, and transport physical narcotics, weapons, and proceeds from the sale of narcotics. Based on electronic and physical surveillance, agents/officers have learned that JENNINGS uses the handset using cellular telephone number (513) 430-6338 (Jennings Phone #1) to coordinate drug customers and co-conspirators and that JENNINGS uses **SUBJECT LOCATION 1** and **SUBJECT LOCATION 2** as well as **SUBJECT LOCATION 5** to facilitate an ongoing illegal fentanyl, cocaine, methamphetamine, and marijuana trafficking business. Agents/officers have learned that JENNINGS lives at **SUBJECT LOCATION 4** and believe that JENNINGS uses **SUBJECT LOCATION 4** to store proceeds of his illegal drug trafficking.

112.    Based on my training and experience, and my participation in this investigation, I believe that BEACHER uses Enterprise rental cars such as previously rented and returned silver Nissan Altima bearing Ohio passenger plate HSV5154 (Target Vehicle #2) and the currently rented silver Dodge Charger bearing Alabama license plate 11KY153 (**TARGET VEHICLE #3**) to store,

distribute, and transport physical narcotics, weapons, and proceeds from the sale of narcotics. Based on electronic and physical surveillance, agents/officers have learned that BEACHER uses the handset using (419) 936-0005 (BEACHER Phone #1), (513) 773-9371 (BEACHER Phone #2), and (302) 465-3603 (BEACHER Phone #3) to coordinate drug customers and co-conspirators. Agents/officers have learned that BEACHER also uses the same residences as JENNINGS, 1441 Hillcrest, Apartment 4 (**SUBJECT LOCATION 1**) and Apartment 8 (**SUBJECT LOCATION 2**), and 419 W 12th Street, Apartment 2, Newport, Kentucky 41071 to facilitate an ongoing illegal fentanyl, cocaine, and methamphetamine trafficking business. Agents/officers have learned that BEACHER lives at **SUBJECT LOCATION 6**. Agents/officers believe that BEACHER lives at **SUBJECT LOCATION 6** and utilizes this residence to store proceeds, phones, and documentation of his illegal drug trafficking.

113.    It is the agents'/officers' experience that narcotics traffickers commonly maintain residences where they store the proceeds and other quantities of contraband. Agents/officers are also aware that narcotics traffickers will often use commercial locations to facilitate their drug sales. It is agents'/officers' experience that illegal narcotics traffickers commonly store, prepare, and maintain illegal narcotics, weapons used to facilitate illegal drug trafficking, packaging material, records, cellular telephones and communication devices, currency derived from illegal drug sales and paraphernalia associated with illegal drug trafficking at locations in which they reside or have access to and in vehicles they operate and exert control over.  Agents/officers therefore believe the items listed in this search warrant are currently at the **SUBJECT LOCATIONS** for which this warrant is sought.

## ITEMS COMMON TO SEARCH/SEIZE

114.     Based upon my training and experience, the training and experience of other law enforcement officers, and the facts contained herein, I know materials searched for and recovered in locations involved in drug investigations have included various controlled substances, including, but not limited to: methamphetamine and marijuana; drug paraphernalia such as scales, papers and drug packaging materials; books and records reflecting sales; the transfer or transportation of drugs and amounts of monies owed for drugs; records reflecting the names, addresses, and telephone numbers of co-conspirators; sales receipts and other records reflecting the expenditure of monies that are the proceeds from unlawful drug distribution; currency and money wrappers; records of transactions to conceal and launder drug trafficking proceeds; and various valuable assets purchased with the proceeds of unlawful drug trafficking. These items, obtained by search warrants, constituted evidence of Federal drug violations.

115.     Based upon my training and experience, my participation in this investigation, and other drug trafficking investigations, I have reason to believe that:

        a.     drug traffickers often place assets in names other than their own to avoid detection of these assets by government and law enforcement agencies;

        b.     drug traffickers often place assets in names of business/corporate entities as nominee title holders in order to avoid detection of these assets by government and law enforcement agencies; even though these assets are placed in the names of other persons or entities, the drug traffickers continue to use these assets and exercise dominion and control over them;

        c.     drug traffickers must maintain and/or have quick access to large amounts of United States currency or other liquid assets in order to maintain and finance their ongoing drug business;

44

d.  drug traffickers often maintain money counting machines, money wrappers and rubber bands, boxes, bags, briefcases, suitcases, or containers used to carry drug proceeds and/or controlled substances;

e.  drug traffickers often maintain in their residences and/or business establishments records relating to the transportation, ordering, sale and distribution of controlled substances and the outstanding debts and collections from controlled substances that have been distributed including some or all of the following: written books, records, receipts, diaries, notes, ledgers, airline tickets, cashier's checks, money orders and other papers (i.e. bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs);

f.  drug traffickers commonly use cellular phones to communicate with other members of the DTO, narcotics source(s) of supply, and/or narcotics customers in furtherance of violations of the Uniform Controlled Substances Act;

g.  drug traffickers commonly provide illegal narcotics to their organization on consignment sale to their customers, who subsequently pay for the drugs after reselling said drugs. Therefore, the above-mentioned books, records, receipts, notes, ledgers, etc., will be secured by the drug traffickers within their residences and/or their businesses for their ready access for the purpose of determining drug debts and collecting monies derived from the sale of drugs;

h.  drug traffickers commonly conceal contraband, proceeds of drug transactions, records of these transactions, and records reflecting names, nicknames, addresses and telephone numbers of drug associates within their residence and/or place of business, their business vehicles,

or the curtilage of their residence or business for ready access and to hide them from law enforcement agencies;

      i.      drug traffickers commonly will attempt to legitimize the profits from illegal drug transactions by using domestic banks and their attendant services (i.e., safe deposit boxes, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts), and evidence of this includes documents like stock certificates, bonds, deposit certificates, and travelers checks;

      j.      drug traffickers often have photographs or video movies of themselves, their co-conspirators and the property and assets purchased with drug proceeds. These photographs and video movies are normally in the drug traffickers' possession, their residence, and/or their place of business;

      k.      drug traffickers' methods of transporting drugs include but are not limited to: commercial airlines, private motor vehicles, and government and contract mail carriers. I know that the vehicles, residences, or business locations of drug traffickers will often contain records of drug-related travel. These records may include airline ticket receipts, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps and written directions to locations, rental car receipts, and luggage tags reflecting points of travel;

      l.      drug traffickers commonly have firearms in their possession (on their person, at their residence, and/or their business) including but not limited to handguns, rifles, shotguns, and automatic weapons. These firearms are most often used and/or maintained in order to protect and secure a drug trafficker's property or manufacturing operation;

m.      it is common for drug traffickers to secret in their vehicles items identified in the above paragraphs;

n.      drug traffickers will often accumulate and maintain substantial amounts of drug proceeds, specifically currency, over a period of years, so that the proceeds can be used in later years for personal asset acquisitions and/or expenditures during periods when a drug trafficker is not distributing drugs;

o.      drug traffickers commonly will maintain residence(s) separate from their primary residence to serve as "safe houses" where the traffickers may stay for periods of time; I know that these residences which may be occupied by other conspirators or associates may contain elements of the traffickers drug crimes to include all items noted above;

p.      drug traffickers commonly have evidence of purchases of goods used in the manufacture of controlled substances secreted in their residences, businesses, or vehicles; and

q.      drug traffickers commonly secret in their residences and/or places of business, over a period of years, items such as those identified in the above paragraphs.

## **CONCLUSION**

116.    I believe the facts contained within this affidavit support probable cause to believe that Alton BEACHER, Quinton JENNINGS, Steffen ROBERSON, and their co-conspirators are involved in distributing marijuana, methamphetamine, fentanyl, and cocaine. Based on my training, experience, discussions with other law enforcement agents/officers, and the information contained herein, I believe that probable cause exists that the items listed in Attachment B will be found at the **SUBJECT LOCATIONS** further described and identified in **Attachment A** and that these will constitute evidence of a conspiracy to possess with intent to distribute, and distribute

methamphetamine, and/or other controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846.

117.    This is based upon information set forth herein, including surveillance conducted on all locations, information received from confidential and reliable informants, and from DEA TFO agents, officers with the Cincinnati Police Department, as well as agents with the Federal Bureau of Investigation.  Agents/officers know that Alton BEACHER, Quinton JENNINGS, and Steffen ROBERSON are using the **SUBJECT LOCATIONS** in furtherance of their drug trafficking operations.  It is my belief that items of evidentiary value pertaining to illegal drug trafficking are located inside the **SUBJECT LOCATIONS**.

## REQUEST FOR SEALING

118.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

## REVIEW AND APPROVAL

119.    Special Assistant United States Attorney, Ashley Brucato, has reviewed this affidavit and

the associated application and warrants and in her opinion, they are legally and factually sufficient.

I respectfully ask the Court to authorize the requested search warrants.

_____
Cameron C. Rice
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this  15  day of November, 2021.
**via electronic means, specifically Facetime video.**

_____
HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

49

## ATTACHMENT A5
### (Subject Location 5)

### Place to be searched:

### 888 W North Bend Road #1022, Cincinnati, Ohio 45224

888 W North Bend Road, #1022, Cincinnati, Ohio 45224, further described as storage unit #1022 located in the premises of iStorage Self Storage. The property is a white concrete structure with a red roof and red windows. The main structure of the building also has a red roof over the common entry door. Unit #1022 is clearly marked with a "1022". Unit #1022 has a green door and one padlock style lock. The address is identified as 888 North Bend Road on the Hamilton County Auditor's Office with Parcel number 590-0211-0415-00.



# ATTACHMENT B

## Property to be seized:

All records relating to violations of 21 U.S.C. §§ 841(a)(1), 846 (distribution of and/or possession with the intent to distribute controlled substances and conspiracy to do the same); possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) including the following:

a. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity and/or times when drugs were obtained, transferred, sold, distributed, and/or concealed;

b. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs;

c. Cellular telephones, digital telephones, car telephones, or other communications devices which evidence participation in a conspiracy to distribute controlled substances.

d. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

e. Any computer equipment, digital device, magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and any other digital device capable of accessing the internet and capable of being used to commit or further the crimes outline above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes.

f. Financial instruments purchased with currency derived from the sale of controlled substances, including travelers' checks, bonds, stock certificates, cashier's checks, and certificates of deposit;

g. Money counting machines, money wrappers and rubber bands, boxes, bags, briefcases, suitcases, or containers used to carry controlled substances;

h. Records, documents, and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of the sales of controlled substances;

i. Records, items, and documents reflecting travel for the purpose of participating in drug trafficking, including airline tickets, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps, and written directions to locations;

j. Handguns, shotguns and other firearms, and ammunition, which may be used to facilitate the distribution or possession with intent to distribute controlled substances;

k. Indicia of ownership and use of the vehicles, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, keys and bank account records, registration, title, insurance, and traffic tickets;

l. Photographs or video movies of drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds.

m. Controlled substances, including, but not limited to, methamphetamine and/or marijuana.

n. Drug paraphernalia, which can be used to store, package, weigh, dilute, and ingest controlled substances; equipment pertaining to methamphetamine and/or marijuana, and any other supplies related to the manufacture and distribution of said controlled substances.

o. United States currency, precious metals, jewelry, financial instruments and stocks and bonds; and

p. Any locked or closed containers, to include safes or lockboxes, believed to contain any of the above listed evidence

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of cell phone or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "cell phone" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop cell phones, notebook cell phones, mobile phones, tablets, server cell phones, and network hardware.

The term "storage medium" includes any physical object upon which cell phone data can be recorded.  Examples include hard disks, SIM cards and other magnetic media.